[Civ. No. 13512.   First Dist., Div. One.   Feb. 24, 1948.]

RAYMOND H. DRY, Respondent, v. CITY AND COUNTY OF SAN FRANCISCO, Appellant.

John J. O'Toole, City Attorney, John F. Moran and Geo. E. Baglin, Deputy City Attorneys, for Appellant.

Gladstein, Andersen, Resner & Sawyer, George R. Andersen and Ewing Sibbett for Respondent.

WARD, J.—Defendant failed to file an adequate record on appeal in the above entitled matter. After the original opinion had been filed defendant presented a motion to augment the record. That motion was granted, which requires a modification of the opinion. A petition for rehearing was granted and the matter submitted. After reconsideration of the record as augmented we are convinced that the opinion heretofore filed correctly disposed of this appeal. The opinion has been redrafted in view of the augmented record and is as follows:

The appeal, as appears in the trial court minute record, is from an order granting a motion for new trial after verdict by jury, on the ground of newly discovered evidence.

Plaintiff, an employee in the construction department of an electric service company, on May 21, 1945, was proceeding homeward after 6 o'clock p. m. on a Geary Street municipal car. He testified the car "was crowded but not jammed . . . people [were] standing in the aisles and on the back platform . . . I stood on the back platform, inside the door, between the controller box and the opening at the back . . . the extreme rear of the car. . . . There seemed to be something out of control of the operator, which caused it to give a terrific jerk at several stops. I believe the first I noticed was at Polk Street. That is, when the electric braker goes out, it stops and starts with a terrific jerk." Near Octavia Street "The car pulled up to the usual stop at the intersection, and I presume there were people getting off, and it started again with a violent jerk, pulled up a few feet and stopped very abruptly, causing all the standing passengers to surge forward and back as the car moved. Then it started

again, immediately after that stop, and made another terrific jerk and stopped, and passengers were overbalanced, all surging back again, and knocking me right out of the back door into the street.'' On cross-examination plaintiff testified: ''There is an iron grill that they use when they turn the car around, and which was directly against my back, and that was joined onto it, within a space of a foot or so. I was leaning against that, and another person was leaning against the controller, and several jammed between me and the fare box, toward the center of the car.'' Plaintiff testified that at the time of the last jerk he was not holding on to anything but that prior thereto he had ''held on.'' The record shows: ''Q. You say that someone bumped against you and threw you out to the right, onto the street? A. That's right. Q. This person that bumped against you, did that person fall out in the street, too? A. I don't know. I was knocked unconscious. . . . Q. As you were going out of the car—you say you were thrown to the right out of the car —did you see anybody else thrown out of the car? A. No, I was busy grabbing for the center rod and wasn't paying any attention to the rest of the people. Q. Well, in any event, as far as you are aware at this particular time, you did not notice anyone but yourself going out to the right, out of that car? A. No. Q. You are sure you were riding inside of the car? A. Positive. . . . MR. MORAN [for the defendant]: Q. I assume that in your condition, you did not know whether the streetcar came to a stop after the accident? A. No.''

A conductorette, called as a witness by the defense, testified that she had no recollection of anyone falling or being thrown from the car. Subsequently plaintiff testified that the witness was not the conductorette on the car in question. A police officer, at the time of the accident attached to the Accident Prevention Bureau, reading from his report of the accident, testified: ''The victim, who was riding on the platform of the westbound 'B' line, stated that the streetcar after making a stop at the intersection of Octavia Street, started to move ahead and due to another passenger falling against him, he lost his balance and fell off the streetcar onto the pavement causing the above injuries.'' An important issue was whether plaintiff was thrown from the streetcar as the result of an unusual jerk or lurch.

The jury returned a verdict in favor of defendant on De-

cember 4, 1946. A notice of motion for a new trial upon the usual statutory grounds including newly discovered evidence was filed December 11, 1946. Affidavits supporting the motion on the ground of newly discovered evidence were sworn to on December 18, 1946, and filed the following day.

An affidavit sworn to by Audrey R. Buynoch set forth that ''As I was about to cross Octavia Street, all of a sudden I heard a noise like brakes screeching, which caused me to look in the direction of a street car going west, and I saw the street car give a great movement, which I can best call a 'lurch,' and then proceed ahead; and then I saw a body which I later identified as Mr. Dry, lying on the street near the tracks . . . the street car did not stop and render any aid or assistance to Mr. Dry, but continued on out Geary Street . . .'' A second affidavit, made by Albert H. Pellandini, the proprietor of a grocery store, set forth: ''That I remember an accident occurring about May 1945, and at that time I was standing near the front window of the store, and my attention was attracted to a street car by suddenly hearing the noise and crunch and screech of street car brakes, and then I saw the street car sort of stop and lurch, and during that period I saw the body of a man fall off the rear platform of the car and land in the street by the street car tracks. . . . The street car, after the terrific lurch which I have mentioned, did not stop, but thereafter continued on and the street car was crowded.''

In a counteraffidavit one of the attorneys for defendant, disputing the correctness of the affidavit of Pellandini, states that previous to the trial Pellandini had stated ''he did not witness the accident, but saw the injured man lying in the street.'' It was also averred that subsequent to the action Pellandini informed ''affiant that he did not see the plaintiff fall off the street car in question and was not aware that such statement was in the affidavit he signed.'' The affidavit attacking that of Pellandini merely raises the question of Pellandini's veracity, a matter to be decided by the trial judge. The Buynoch affidavit is not attacked on this ground. The court may have considered one or both of the affidavits.

The first question to consider is whether the plaintiff exercised proper diligence to obtain the designated newly discovered evidence. Plaintiff filed an affidavit in which he averred that immediately after the accident he was rendered unconscious, shortly thereafter becoming semiconscious; that either while he was lying upon the ground or en route to a hospital

in such semiconscious condition he heard various people talking and that he had a hazy recollection of a name that sounded like "Vinnock"; that after leaving the hospital he made a search for witnesses in the neighborhood of the accident but without success. Plaintiff further averred "That by virtue of the facts pleaded and set forth herein, plaintiff was unable, with reasonable diligence, to discover and produce said evidence prior to the date of trial; that said evidence is material to the issues herein; and that said testimony, if admitted, would result in a different verdict, upon another trial of said cause."

Plaintiff does not dispute the well-established rule that in support of a motion for new trial on the ground of newly discovered evidence, the moving party must show that he made a reasonably diligent effort to produce the evidence at the trial. A number of citations, including *People* v. *Byrne,* 160 Cal. 217 [116 P. 521], are listed by defendant in support of this rule, in all of which the orders appealed from were affirmed. Defendant argues that plaintiff's attorney failed to file an affidavit that prior to the verdict he did not know of the newly discovered evidence. Defendant cites in this connection cases headed by *Estate of Cover,* 188 Cal. 133 [204 P. 583]. In all of these cases the trial court's action in refusing to grant a new trial on the ground of newly discovered evidence was upheld on appeal. None of these cases are authority for a requirement that the party moving for a new trial on the ground of newly discovered evidence should have his counsel file an affidavit that he had no knowledge of the newly discovered evidence prior to the verdict.

It is next urged by defendant that plaintiff's counsel was required to show that in the preparation of the case they made every reasonable search for witnesses who might reasonably be expected to give testimony concerning the facts in issue. Defendant quotes *Sofuye* v. *Pieters-Wheeler Seed Co.,* 62 Cal. App. 198, 208 [216 P. 990] : "An attorney holds himself out as one who will faithfully perform any service within the scope of his profession committed to him by a litigant or a client and when employed in his professional capacity is always specifically charged with the duty of taking such steps as the case requires shall be taken to protect or conserve the rights of the client." The quoted statement was made by the court in connection with its ruling on the problem of reliance upon the promise of a third party to defend an action as excusable neglect justifying the trial court in setting aside a default judg-

ment. It does not cover the problem at hand. A number of cases are cited seemingly upholding the views of the respective parties. It does not appear necessary to harmonize or reconcile or differentiate the various holdings. The language used in each decision is designed to present the facts of the particular case so that the reviewing court might affirm or reverse the order or judgment in conformity with the conclusion it had reached.

Ordinarily the conclusion of the trial court on a motion for a new trial based on newly discovered evidence is not disturbed on appeal for the simple reason that the trial judge is in a better position, due to his familiarity with the facts and circumstances, to determine the effect and value of the alleged new evidence, than is a reviewing court. However, the trial judge's discretionary determination is not final. █ As applied to the present problem, whether a party moving for a new trial made timely and diligent search for witnesses who might reasonably be expected to be in possession of evidence concerning the material facts, is a matter which the appellate court will consider in determining whether the trial court abused its discretion. This does not mean that the reviewing court may substitute its opinion for that of the trial court, but that it will consider and determine whether the discovered evidence is reasonably likely to result in a different verdict, and whether the moving party was timely and diligent in his search for new evidence. Defendant stresses the case of *Vertson* v. *City of Los Angeles,* 116 Cal.App. 114 [2 P.2d 411]. There the action was for personal injuries consisting of serious burns suffered by plaintiff while working in a storm drain, laying pipe, when defendants' power wires fell and came in contact with him. In support of the motion defendants presented the affidavits of thirteen persons of which only two (pp. 118-120) contained ''the statement that the affiant actually saw the boom of the trench machine strike the power wires. . . . This is significant since [defendants'] . . . principal defense [was] that the boom of the drag-line machine operated by the contractors then engaged in constructing the storm drain . . . had come in contact with the power wires, causing them to short circuit and fall. . . . Despite the emphatic avowals of diligent search for witnesses contained in the affidavits of the gentlemen who conducted the investigation . . . the bald facts indicate surprising lack of diligence.'' Diligence in discovering new evidence in one case may not be the diligence that should be required in another case. (*Heintz* v. *Cooper,* 104

Cal. 668 [38 P. 511].) With these tests in mind the facts and circumstances may be considered.

In the present case the plaintiff was the only witness who testified that the car gave a "terrific jerk," which knocked him "out of the back door into the street." The affidavit of plaintiff shows that he did not know but had cause to believe that there were witnesses, unknown to him, who witnessed the accident. Plaintiff's affidavit shows that a search was made by him to discover such witnesses within a reasonable time after his release from the hospital. The fact that the witnesses were not discovered at that time and were located so soon after the verdict may raise a suspicion as to plaintiff's good faith, but a suspicion is not sufficient to warrant this court in deciding as a matter of law that the trial court abused its discretion in granting a new trial. The order for a new trial was an implied finding that plaintiff had exercised reasonable diligence in view of all the surrounding circumstances, and that the new evidence was of sufficient importance to require a resubmission of the issues to another jury.

The answer to the complaint, after denial of defendant's negligence, alleged that plaintiff was negligent and that such negligence proximately contributed to and caused the happening of the accident. On a new trial contributory negligence under the present pleadings may be an issue. Whether there will be evidence sustaining the special defense is a matter that cannot be determined at this time. However, on the previous trial the court stated in the instructions to the jury: "I may say in passing that there is no evidence of contributory negligence in this case."

Defendant urges: "The claimed newly discovered evidence relates solely to the alleged negligence of defendant, whereas there was sufficient evidence to support the finding of the jury that plaintiff was guilty of negligence proximately causing his injuries, wherefore the trial court committed prejudicial error in granting plaintiff a new trial." Defendant argues that in the instant case the newly discovered evidence bears solely on the defendant's negligence. As to this, defendant contends that there is ample evidence of contributory negligence, and that the jury found against plaintiff because of his own negligence. The evidence of the two witnesses may be corroborative of plaintiff's testimony. It will be evidence tending to answer the material question propounded by the defense—"whether the street car came to a stop after the accident."

The contention that in the last trial there was evidence to support a finding of the jury that plaintiff was guilty of contributory negligence is not borne out by the record. In *Parker* v. *Southern Pacific Co.*, 204 Cal. 609 [269 P. 622], it was said that the newly discovered evidence had no pertinency to the issue of contributory negligence, but in that case there was evidence of contributory negligence introduced. Likewise, in *Dougherty* v. *Union Traction Co.*, 23 Cal.App. 17 [136 P. 722], there was testimony given by plaintiff that she was to blame for the accident. In the present case it appears that plaintiff noticed the "lurch or jerk" of the car approximately four blocks from the scene of the accident. It is not contended that he should have left the car at a "car stop," but that at the time of the accident he should have grabbed or held on to part of the stanchion or the mechanism of the car. Plaintiff testified that he had been holding on but that immediately before the accident he was "jammed" by other passengers and did not hold on as he was thrown from the car. There is no evidence to show that at the time of the accident plaintiff could have held on.

Each of the appeals referred to attacking an order granting a motion for a new trial was decided upon the particular and peculiar facts of the case, which are not, nor are·those of the other cases cited by defendant, identical with those here considered. They simply and correctly set forth rules for the determination of the particular case then before the court.

The order granting plaintiff's motion for a new trial is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied March 25, 1948, and appellant's petition for a hearing by the Supreme Court was denied April 22, 1948.